UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEGAN LLC,

    Plaintiff,

    v.

ZYNGA INC,

    Defendant.

Case No. 14-cv-01315-VC

**CLAIM CONSTRUCTION ORDER AND ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE**

Re: Dkt. No. 142, 163

### Claim Construction

Per the Patent Local Rules, the parties selected from among ten claim terms the ones they believed were the most significant for resolution of the case. However, because construction of two terms – "without requiring user interaction with the service provider" and "offering a new character enhancement" – is case dispositive, the Court will construe only them.

Claim 1 of Patent No. 7,054,928 (the '928 Patent) is a system claim comprising, in relevant part:

> a target website for *offering a new character enhancement* for the user's character icon, wherein the new character enhancement is capable of being enabled in the user's record at the service provider *without requiring user interaction with the service provider* . . . wherein, when the user visits the target website using the browser program, the target website uses the unique identifier on the user device to access the user's record at the service provider *without requiring user interaction with the service provider*, whereby any new character enhancement offered to the user is appropriate for the user's character icon.

'928 Patent (Claim 1) 19:3-7, 12-18 (emphases added).

    1. "without requiring user interaction with the service provider"

Zynga argues this is a straightforward term and does not need to be construed; Segan, on the other hand, ascribes a very specific meaning to it: "without the user having to take an action to

1  leave the target website and visit a service provider site to take some action at that site." In other
2  words, under Segan's construction, a user cannot interact with the service provider unless the user
3  departs the target website, goes to the service provider site, and then performs some function at the
4  service provider site. But there is no support for such an artificially narrow construction of
5  "interaction with the service provider," both because service provider cannot be limited to only
6  "service provider site," and because "user interaction" has a broader meaning than the one Segan
7  suggests.
8        With respect to "service provider," the claim itself, including the very clause in which the
9  term appears, suggests that "service provider" is not synonymous with "service provider site." The
10 term "service provider" is used twice in the claim: the target website accesses "the user's record at
11 the [i] service provider without requiring user interaction with the [ii] service provider." *Id.* 19:14-
12 16. The same term should be construed consistently throughout the claim. *See, e.g.*, *Frank's
13 Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1377 (Fed. Cir. 2004);
14 *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1345 (Fed. Cir. 1998); *Phonometrics, Inc.
15 v. Northern Telecome, Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998). And it makes no sense to
16 construe the first use of "service provider" as "service provider site," because the target website
17 clearly does not access user records at or from a service provider site. Therefore, the claim itself
18 indicates that service provider, both times it is used in the clause, has a broader meaning than
19 simply "service provider site."
20       This is particularly true when the term is viewed in light of the specification, which "is the
21 single best guide to the meaning of a disputed term." *Vitrionics Corp. v. Conceptronic, Inc.*, 90
22 F.3d 1576, 1582 (Fed. Cir. 1996). The specification consistently refers to three different terms:
23 "service provider," "service provider server," and "service provider site." *See, e.g.*, '928 Patent
24 2:33-34, 2:45-40, 4:1-3, 4:3-6, 4:8-15; 4:15-22, 14:3-5. "Different claim terms are presumed to
25 have different meanings," *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1333 (Fed. Cir. 2014)
26 (quoting *Helmsderfer v. Bobrick Washroom Equip. Inc.*, 527 F.3d 1379, 1382 (Fed Cir. 2008)),
27 and the inventor obviously knew how to limit the claim language to "service provider site" had he
28 so desired.

1    Segan contends the inventor may not have used "service provider site" because the claim
2    itself does not require that the service provider have a site, and so it would have been incongruous
3    for the claim to include a potentially nonexistent "service provider site." This may be an adequate
4    explanation for why the claim does not use "service provider site." But it is not an affirmative
5    reason for why the Court should add this limitation and change the meaning of "service provider."
6    In fact, it suggests the opposite – the claim language should encompass those situations where the
7    service provider has its own website and the situations where it does not. The broader term,
8    "service provider," applies to both situations.

9    The question, therefore, is what does it mean for a user to "interact" with the service
10   provider, with the understanding that "service provider" is not limited to "service provider site."
11   As indicated, Zynga thinks that "user interaction with the service provider" has a plain and
12   ordinary meaning, whereas Segan argues that it means a very specific set of user actions, namely,
13   that the user leaves the target website, goes to the service provider site, and takes some action at
14   that site. It's true, as Segan notes, that the Background section of the patent explains that the
15   invention sought to address the problem of an internet user clicking on a banner advertisement
16   displayed on a host web page, which directs the user "away from the host web page to a web page
17   associated with the banner advertisement sponsor." '928 Patent 1:61-62. But the claim language
18   does not describe "user interaction with the service provider" in such narrow and specific terms. It
19   does not say "without requiring the user to leave the target website," even though it easily could
20   have done so. It says "without requiring user interaction with the service provider," and such
21   interaction is obviously possible without a user leaving a website. It would be improper to
22   construe this claim language as narrowly as the language of the Background section, because it
23   must be assumed that the use of different language was the product of a deliberate choice. *See Int'l*
24   *Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1374 (Fed. Cir. 2004) ("[W]e must consider the
25   word that the inventor actually chose and use the definitions of that term that are consistent with
26   the written description.").

27   Accordingly, the Court construes this claim language in accordance with its ordinary
28   meaning, as urged by Zynga. "Interaction" has a clear meaning: some action or engagement

3

1   between two or more entities. So in the context of the claim, the phrase "without requiring user
2   interaction with the service provider" means that the user does not engage with or take some
3   action with the service provider. This construction effectuates the purpose of the patent, but
4   without contorting the claim language as Segan would have the Court do.

      2.   "offering a new character enhancement"

Segan proposes to construe the entire phrase, "a target website for offering a new character enhancement for the user's character icon," as "a target website making a character enhancement known and available to a user." Making something "known and available" is not what offering means. To offer something means to give someone the opportunity to accept or take it, or to present something for acceptance or rejection. As Zynga pointed out in its brief, the Patent uses the term "offer" and its variants 33 times in the written description of the patent, and each time it uses the word in its normal way. *See* Zynga Opening Claim Construction and Summary Judgment Brief 30:8-11 (Dkt. No. 142). Accordingly, there is no need to construe "offering."

Segan also argues that because of the word "for" in the phrase "target website for offering a new character enhancement," the target website is not necessarily the entity which offers an enhancement; rather, the target website can merely serve as the platform through which an offer of a character enhancement is made. This is clearly incorrect. First, the patent consistently teaches that the target website offers the enhancement; indeed, it is one of the fundamental features of the invention. Second, to interpret "for" in this manner would render the claim nonsensical. Consider the claim's description of a service provider: "a service provider *for* maintaining a user record . . . *for* authorizing the GUI application to depict the character icon, and *for* providing . . . previously enabled character enhancements for the user's character icon." '928 Patent 18:59-65 (emphasis added). Obviously the service provider performs those functions; it makes no sense to say that the service provider simply serves as a vehicle for their performance. Third, it is consistent with Federal Circuit law to interpret "for," when it is used between a component and a function, as meaning the component performs the stated function. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011).

**Summary Judgment**

Segan has sued Zynga for direct and indirect infringement of the '928 Patent. Segan alleges that Zynga is the service provider, Facebook is the target website, and infringement occurs when a user, while playing a Zynga game within an iFrame on a Facebook webpage, receives a character enhancement which is appropriate for the user's character icon.

Zynga cannot literally infringe the '928 Patent unless the accused system meets every limitation in the asserted claim. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). Here, the accused system does not meet the claim limitation of the target website accessing the user record "without requiring user interaction with the service provider," and therefore there is no infringement. The Court has construed the term as having its plain and ordinary meaning, whereby the user does not engage with or take some action with the service provider. Yet this is exactly what a user does when she plays an accused game in the Facebook iFrame – she engages with Zynga, or, more precisely, she never stops engaging with Zynga, which provides all the code and content for the game the user is playing. Segan claims there is a disputed fact as to whether the user interacts with Zynga. But the parties agree that Zynga, not Facebook, provides the code and content for all the accused games that users play on the Facebook website. So under the Court's construction – or, really, under any logical construction of "interaction" – it is clear that a user who logs into Facebook, accesses a Zynga game, experiences that game loaded into an iFrame on the Facebook website, plays the game, and, while playing, receives a character enhancement, is engaging with Zynga, the service provider, from the moment the game is launched.

Segan counters by pointing to a preferred embodiment disclosed in the specification, arguing that the embodiment describes the same functionality as a Zynga game loaded into a Facebook iFrame. But in reality, the contrast between the disclosed embodiment and the accused system further highlights the mismatch. The patent states:

> In the preferred embodiment, all character icon content such as enhancement content will be conveyed to a user through a readily accessible multi-media software application. A presently preferred application for this purpose is the "Flash Player" . . . The target sites will embed a Flash movie provided by the service provider site in

5

>the HTML for the target web site pages. When the movie is run, it will load and interpret the user's character icon and character enhancement data and display the results. All communication of character icon data between the home site and the participating target web site will be processed by the Flash movie. The movie will also include all necessary security, as is known in the art, to ensure that only participating web sites can access the service provider database containing the user preference information and character icon information.

'928 Patent 13:30-34, 45-52. In this embodiment, the embedded flash movie is the character icon window. That character icon window is *provided* by the service provider, meaning the GUI application communicates with the service provider and displays the window. But in the accused system, the embedded iFrame *is* the service provider. And more importantly, in the preferred embodiment, the character icon window does not perform any of the key functionalities; the target website does. Yet in the accused system, the embedded iFrame performs almost all of them.

      This is made especially clear when considering the "offering" claim limitation. Claim 1 requires "a target website for offering a new character enhancement for the user's character icon," and the Court, as described above, has construed "offering" as having its plain and ordinary meaning. In the preferred embodiment, the target website, not the character icon window, offers the character enhancements. But in the accused system, Zynga servers, which provide all game content, are responsible for offering character enhancements. Segan never alleges that Zynga does not provide the game content.

      In the face of all this, Segan bases its infringement theory on an expansive construction of "target website," in an attempt to establish that Facebook is doing the offering, and that the user playing Zynga's game on the Facebook website is not "interacting" with Zynga. Segan proposes to construe "target website" as including everything that a user sees and experiences while visiting a webpage of that target website, regardless of what entity is responsible for generating and providing the content on that webpage. Specifically, it proposes to construe "target website" as "a website other than a service provider for providing the recited functions; 'website' means a set of related web pages, each page identified by a URL and including its underlying code and all content presented by a browser when a user visits that page." Based on this proposed construction, Segan argues that regardless of how the Court construes "offering," Facebook "offers" the

character enhancements, because the user receives the offer for enhancements while on a Facebook web page. On its face, this makes little sense – it is akin to saying that when a person sees an ad on television to call a 1-800 number to purchase some kitchen knives, the entity making the "offer" for the knives is the television network that happens to be running the ad. But even if the Court were to adopt a construction of "target website" that would allow Zynga's offers of character enhancements in its games to also be considered Facebook's offers (akin to saying that both the knife company and the TV network are making the offer), the fact remains that Zynga is still doing the offering as well, because its servers are providing all game content. And this means the user is interacting with Zynga when she accepts the offer of a character enhancement, which precludes a finding of infringement.[1]

Accordingly, there is no direct infringement because the accused system does not meet the claim limitation of a target website accessing "the user's record at the service provider *without requiring user interaction with the service provider*." And because there can be no indirect infringement without direct infringement, *In re Bill of Landing Transmission and Processing Sys. Patent Lit.*, 681 F.3d 1323, 1330 (Fed. Cir. 2012), summary judgment is granted for Zynga.[2]

Zynga's motion to strike is denied as moot.

**IT IS SO ORDERED.**

Dated: April 7, 2015

VINCE CHHABRIA
United States District Judge

---

[1] To be clear, the Court is electing not to construe "target website" because it is not necessary for resolution of the case.

[2] Segan also accuses Zynga games played on other social networking sites besides Facebook. But the analysis is the same with respect to these sites – Zynga provides all game content, and the user always interacts with Zynga. Accordingly, there is no infringement.